CHARLES T. NASH et al.

v.

CLASS CLASSEN.

|163    409|
|204   ¹154|

*Filed at Ottawa November 9, 1896.*

1. TRIAL—*when force of written instrument is for the jury and need not be construed by court.* A written instrument offered on the question of agency, not for the purpose of completely proving the agency, but as an element tending to prove it and in corroboration of parol proof, need not be construed by the court, but it is for the jury to say whether the evidence, as a whole, proves agency.

2. NOTICE—*agent's knowledge is attributed to principal.* Knowledge of an agent as to the transaction in which he is engaged is notice to the principal.

3. PRINCIPAL AND AGENT—*one clothed with apparent authority can bind principal.* A principal who clothes an agent with apparent duties of buying and handling grain for him is bound by contracts made by such agent, in the absence of any express limitation upon such authority.

4. EVIDENCE—*courts take judicial notice that grain is generally bought on late quotations.* The court will take notice of the usual and customary manner in which general commercial business is carried on, and that in the purchase of grain or other commodity the purchaser, as a rule, is governed by the last available quotations.

5. DAMAGES—*measure of, for breach of contract to buy grain.* The damages for breach of a contract to purchase grain at the market price are properly computed upon the basis of the last available quotations in the possession of the parties at the time, consisting of the quotations of the evening before in a morning paper.

*Nash v. Classon*, 55 Ill. App. 356, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOHN BARTON PAYNE, Judge, presiding.

Prior to 1889 H. S. Gilbert operated several grain elevators in the vicinity of the city of Ottawa, one of which was located at Wedron, in LaSalle county. The general office where the business of the several elevators was mostly transacted in paying for grain, etc., was in the city of Ottawa, and the superintendency of the business

in the several elevators was directed by Gilbert from that general office. Several years prior to the date above mentioned Gilbert was the owner of these several elevators, but becoming embarrassed financially, conveyed them to appellants, Nash, Wright & Co. After that conveyance was made, Nash, Wright & Co. entered into a contract with Gilbert, whereby the business at those elevators was to be run for their benefit and under their control and with money furnished by them, and by that contract allowed Gilbert the right to redeem the property upon the payment of the amount of his indebtedness to the appellants and the interest thereon, and during the time Gilbert was to manage and control the business of these elevators appellants were to pay him a salary of $150 per month. They were to have another agent at that office, and that second agent was one Perrin, who was the book-keeper. Appellants opened a deposit with the First National Bank of Ottawa, and checks were drawn against that fund in their name, signed by Perrin. Other agents were employed at other elevators, and payments for grain there purchased were usually made by checks drawn by Perrin in the name of Nash, Wright & Co. Appellants changed the sign at the general office so as to read, "H. S. Gilbert, Agent, Grain and Commissions."

On or about the 3d of November, 1891, the appellee, at the Wedron elevator, made a contract for the sale of corn, which was made with one Smith, an agent of Nash, Wright & Co. By that contract appellee was to shell and haul his corn, and when ready to sell, at any time during the month, was to receive within five cents per bushel of the price quoted in Chicago for the same grade of corn. Between the 5th and 14th of November appellee delivered at the warehouse in Wedron 6379 bushels and twenty-eight pounds of corn, and on the 28th day of November went to the warehouse in Wedron and stated to Smith that he was then ready to sell. Smith replied that he had not received the market reports that day, but had

the *Chicago Tribune* of that morning, and showed to appellee the quotation of prices. A discussion then came up whether appellee would be entitled, under the contract, to the price on the 27th of cash corn or the price at which futures closed. On the 27th cash corn closed at seventy cents and futures at seventy-four cents. Smith directed appellee to see Gilbert, saying he knew all about it. When appellee called on Gilbert at Ottawa the latter refused to recognize the contract and settle for the corn.

The chief controversy in this case is, first, whether there was a contract made by any one authorized to make it on the part of appellants, with appellee; and second, was there proof of the price of corn on the 28th. In the trial court a verdict for plaintiff, and judgment thereon for $4641.96, was entered. That judgment was affirmed by the Appellate Court for the First District.

DUNCAN & GILBERT, and W. H. STEAD, for appellants.

FOWLER BROS., for appellee.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

The first proposition submitted by appellants as a defense to this action and as the reason urged for a reversal of the judgment of the Appellate Court is, that the record contains no evidence legally sufficient to establish any liability on the part of defendants. Incidentally, under this head, we are asked to construe the contract entered into between appellants and Gilbert, for the purpose of determining whether or not the relation of principal and agent existed between them, thus also determining whether or not Smith was the agent of appellants, and authorized to enter into the contract of purchase of the corn from appellee on behalf of appellants.

Ordinarily the construction of a contract in writing is for the court, and not for a jury. (3 Am. & Eng. Ency. of

Law, 167, and cases cited.) The court should construe the written instrument and instruct the jury as to its legal effect. (*Sigsworth* v. *McIntyre*, 18 Ill. 126; *Lintner* v. *Millikin*, 47 id. 178.) In a case, however, where it is sought to establish the question of agency by parol proof of various acts, conduct and business transactions of the parties, and a written instrument is offered, not for the express purpose of proving the agency but as an element tending to prove it and in corroboration of parol proof, no construction need be given it by the court, but it is a question for the jury as to whether all the evidence, taken as a whole, establishes the relationship of principal and agent. If a contract or other instrument in writing be offered for the express purpose of proving the relation of partnership, agency or like character, and the allegation be founded on such instrument, then, as before stated, the construction of the instrument is for the court. In this case, that part of the contract between appellants and Gilbert which is material to the issues involved is as follows.

"Whereas, it is understood and agreed between the parties hereto that the said party of the second part shall engage in and conduct the business of buying and selling grain at the stations of Ottawa, Grand Ridge, Wedron, Serena, Utica and Buffalo Rock, all of said places being in said county of LaSalle, under the conditions and limitations hereinafter expressed, that is to say: Said party of the second part shall conduct said business under the direction and supervision of said parties of the first part, who shall be represented in the management of said business by an agent of their selection, such agent to handle and control all the money used in the conduct of said business, and to exercise a supervisory control over said business in general. Said parties of the first part covenant and agree to furnish and supply to said party of the second part, in the amount above stated, the amount of money necessary for the proper conduct and operation

of said business, and said party of the second part cove-
nants and agrees to pay to said parties of the first part
all moneys so advanced by them, together with interest
thereon at the rate of eight per cent per annum, payable
monthly; to ship all grain purchased by him prior to the
time of making above named payments, to said parties of
the first part at Chicago, or elsewhere, as said parties
may direct. It is covenanted and agreed between the
parties hereto, that there shall be paid out of the earn-
ings of said business a salary, not to exceed $100 per
month, to the agent of said parties heretofore mentioned;
that said second party shall be allowed, out of the net
earnings of said business, the sum of $150 per month, and
all other earnings, after the payment of the necessary
expenses of the business, shall apply upon and go toward
the payment of the said sum of $20,000."

Followed by this was proof that the sign of Gilbert
read, "H. S. Gilbert, Agent, Grain and Commissions."
This was the central office, at Ottawa, of this system of
elevators. The elevator at Wedron was in charge of
Smith. The evidence of Perrin, who is the admitted
agent of appellants, is as follows: "I paid Smith for his
services. Got the money from the First National Bank
of Ottawa. It was Nash, Wright & Co.'s money."

In the transaction of the business of the Wedron ele-
vator were used slips or tickets in the following form,
which were passed out and given to those selling grain:

"Wedron warehouse.—Office of Nash, Wright & Co.—H. S.
Gilbert, Ag't.—Grain and Commission.

NASH, WRIGHT & Co.,
517 Rialto Bldg., Chicago."

All the grain was shipped to appellants, and checks
signed by them were given in payment.

Some proof is offered questioning the fact as to
whether appellants were aware that their name was
being used, and that they instructed Gilbert, on learning

of the fact, repudiating it; but the evidence of Gilbert indicates this was after the present trouble.

On this state of facts the jury in the trial court found, in substance, that Smith, in the purchase of this corn, was the agent of appellants.

Whatever knowledge Smith had regarding the use of appellants' name in this business, and the knowledge possessed by Perrin, who was the acknowledged agent of appellants, must be charged against appellants. In general, notice to the agent as to the transaction in which he is engaged is notice to the principal. (*Bryan* v. *Prim,* Beecher's Breese, 59; *Doyle* v. *Teas,* 4 Scam. 202; *Williams* v. *Brown,* 14 Ill. 200; *Singer Manf. Co.* v. *Holdfodt,* 86 id. 455.) Smith's apparent duties were to buy and handle grain for appellants, and in the absence of any express limitation his authority to make contracts therefor must be presumed. The principal is bound equally by the authority which he actually gives his agent, and by that which, by his own acts, he appears to give. *National Furnace Co.* v. *Keystone Manf. Co.* 110 Ill. 427; *Goeing* v. *Outhouse,* 95 id. 346; *Thurber* v. *Anderson,* 88 id. 167.

After the proposition by appellee to sell was made, Smith says he consulted with Gilbert, and then told appellee it was all right. The corn was delivered to him, and it must be presumed was accepted under this contract. The Appellate Court has found that Smith, in this transaction, was the agent of appellants, and by this finding we are bound; and in addition to that, we cannot readily perceive how, on the evidence offered in the trial court, the finding could have been otherwise.

It is also urged that the evidence offered in support of the price appellee was entitled to recover was insufficient. It is clear from the evidence that in the early and middle part of November appellee hauled his corn and left it with the agent of appellants, with the agreement that whenever he desired to sell he should so announce, and should receive five cents less than the price

in the Chicago market at that date. When he did determine to sell, the market reports for that particular day were not received by appellants' agent. He himself referred to a morning paper giving the quotations for the closing market of the evening before. This court will be presumed to take notice of the usual and customary manner in which the general commercial business of this country is carried on, and that in the purchase of grain or other commodity the purchaser, as a general rule, is governed by the last available information or quotations in his possession. In this case that information was a morning paper giving the quotations of the evening before. The proof offered by appellee to show these prices was admitted by appellants as being reliable authority. On that the jury have based the amount appellee was entitled to recover, and the Appellate Court has in this matter also affirmed their verdict. We see no error in the computation of appellee's measure of damage on this basis.

Various objections are raised to instructions given for appellee and refused for appellants. Counsel for appellants say in their brief: "If this court should take the same view of the evidence, (as the Appellate Court,) and should conclude that the facts were so clear that no errors of law could justify a different verdict, it would be quite useless for us to discuss the instructions and other rulings of the trial court." We do take the same view of the evidence, and are in a great measure bound by the findings of the Appellate Court in this case. We believe the verdict of the jury could not, under the law and the facts, have well been otherwise, and that the instructions, taken as a whole, are correct. Those offered by appellants and refused by the court were all based on the theory that no agency existed to bind appellants. That fact having been determined, renders unnecessary a discussion of the instructions.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*