Dunbar v. Armstrong.

## Charles E. Dunbar v. Wallace Armstrong.

Gen. No. 4,352.

1. INTENTION—*when direct evidence of, competent.* Both in civil and criminal suits. where the intent of the party becomes a material issue in the case, that party may be asked the direct question, what was his intention at the particular time or with respect to the particular act in question. In civil cases, however, where there is no evidence that such intention was communicated to the opposite party, and no circumstances from which it might be fairly submitted to the jury as a question of fact that the other party had notice of the particular intent, then the evidence should be excluded; not, however, on the ground of incompetency, but upon that of immateriality.

2. GAMBLING CONTRACTS—*what deemed.* All contracts made between parties who have no intention of delivering or receiving the property but intend to settle on differences that may exist in the market price

of the article at the time of settlement and the time of contracting, are gambling contracts and therefore void.

Action of assumpsit. Error to the Circuit Court of La Salle County; the Hon. RICHARD M. SKINNER, Judge, presiding. Heard in this court at the April term, 1904. Reversed, with finding of facts. Opinion filed August 24, 1904.

HUTTMANN, BUTTERS & CARR, for plaintiff in error.

McDOUGALL & CHAPMAN, for defendant in error.

MR. JUSTICE VICKERS delivered the opinion of the court.

This is an action of assumpsit on a promissory note given on the first day of August, 1902, for $664.47, due three months from date with six per cent interest. The note was made payable to the Updike Commission Co. and by it endorsed to the defendant in error. The plaintiff in error pleaded the general issue with notice that the note was given for money lost at gaming, and that it was void under the statute relating to gambling contracts; that said note was given for settlement of differences or margins in the price of grain dealt in on the Chicago Board of Trade, with the Updike Commission Co., with the understanding that no grain was to be delivered or received and that the assignee took the note with full notice of the fact. The jury found for the defendant in error and assessed his damages at $688.32, the amount of principal and interest on the note; judgment being rendered on the verdict, this writ of error is sued out to reverse the judgment.

The first error assigned questions the ruling of the court in refusing to permit plaintiff in error to testify what his intention was with respect to delivering or receiving grain under the contracts in question. The determination of this question is not free from difficulty, but it is believed that a careful examination of the cases adjudicated in this and other states will show that the apparent confusion results from the manner of applying the rule to different states of fact, rather than from any real and substantial divergence of views upon the subject. Our statute in regard to gaming and gambling contracts, which is found in the criminal

code of the revision of 1874, as section 130, is modeled after an English statute on the same subject. In Grizewood v. Blane, II C. B. 73, E. C. L. Rep. 333, the chief justice submitted to the jury the question of the intention of the parties, telling them that if there was no intention to buy or sell the shares of stock in question that it was a gambling contract and void. When the cause came before the full bench the direction was held to be correct, the court holding if there was no intention to deliver or receive the stock sold and the parties intended to settle upon the differences, it rendered the transaction a gambling contract and void. Following the construction of the court of that country placed upon the English statute in the case above cited, and in Steers v. Gashly, 6 Dunf. and East, 61, and Brown v. Turner, 7 ib. 630, the courts of this state have uniformly held that it is the intention and purpose of the parties to the transaction that gives it character, upholding and enforcing the contract if the intention is found to be innocent and honest, and declaring it void and unenforceable when the intention is to settle upon differences and not to deliver or receive the subject of the trade. Among numerous cases in our court construing and applying this statute, the following only need to be cited: Pearce v. Foote, 113 Ill. 228; Jamieson v. Wallace, 167 Ill. 388; Cothran v. Ellis, 125 Ill. 496; Schneider v. Turner, 130 Ill. 28; Pope v. Hanke, 155 Ill. 617; Central Stock and Grain Exchange v. Board of Trade of City of Chicago, 196 Ill. 396. It is therefore settled in this state, that all contracts made between parties who have no intention of delivering or receiving the property, but intend to settle on differences that may exist in the market price of the article at the time of settlement and the time of contracting, are gambling contracts and therefore void. The existence or non-existence of the intention not to receive or deliver is a question of fact to be determined by the jury. Jamieson v. Wallace, *supra.* In determining the question of intent no doubt a great variety of circumstances may be proven and the question now under consideration is, may the party be asked the

direct question what his intention was with respect to re-
ceiving or delivering the commodities dealt in. In the
case of Miller v. Bensley and Wagner, 20 App. 528, which
is relied on as authority for refusing the evidence, the court
there holds that under the facts of that case the court prop-
erly refused to permit the appellant to state that he did
not intend to receive the grain and pay for it. It is ex-
pressly stated in the opinion by Justice Green that there
was no evidence in the record of such intention, and if such
intent existed as to one of the parties it could not have the
effect of making the contract invalid as to the other party.
It is to be noted that this case was decided by a divided
court, Mr. Justice Pillsbury dissenting upon the point of
admissibility of this evidence. Carroll v. Holmes, 24
App. 454, is cited and relied on as sustaining the ruling of
the court in refusing this evidence. That case is not a
direct authority either way upon the question involved,
but so far as it goes, it is a side light against the position
of appellee. Justice Baker on page 457 of the opinion
says: "There is no doubt of the illegal intent of appellee
in these transactions, for he testified upon the trial that he
did not intend to deliver any of the grain that he sold, or
receive any that he bought, and there is nothing in the evi-
dence tending to contradict him." So far as the case shows,
no objection was made to this evidence below and the learned
justice who wrote the opinion treated it as proper evidence
although it was not shown that this intention had been
communicated to the other party. Warren & Co. v. Scan-
lon, 59 App. 138, is also relied on to support the ruling.
The case does not support the appellee's position. The
court on page 145 of the opinion says: "The claim that
the contracts were in fact different from what they ap-
peared to be, seems to rest almost exclusively on the testi-
mony of the defendant that he had no intention of receiv-
ing or paying for the grain, and this was admitted against
the objection of the plaintiff." And further on it is said:
"In the absence of any evidence that the plaintiff knew
anything of his intention, the testimony should not have

been admitted," citing Miller v. Bensley, *supra*. This same case was before the court again with the parties reversed and the opinion is found in 68 App. 213. It was then held that the Circuit Court properly refused to allow appellant to testify to his secret intention, there being no pretense that the appellee knew anything of his intention. The case went to the Supreme Court and is reported in 169 Ill. 142, and in affirming the judgment of this court, it is there said : "His undisclosed intention to violate the law or to make a contract with appellees of a character which could not be enforced, could not affect their right to recover of him moneys which they had advanced in good faith at his request, upon a contract which by its terms was valid in law."

It is clear upon reason and authority that where a party makes a contract that is valid upon its face, he ought not to be permitted to relieve himself of its obligations by testifying that at the time he made the contract he had an undisclosed intention which if known to the other parties would render the contract illegal. In a note to section 51, 1 Greenleaf, 15th ed., it is said: "But since, by statutes in most of the states, parties to the suit are admissible as witnesses, it becomes possible to prove their intentions by their own testimony: accordingly, in many cases, the parties have been put on the stand to testify to their intent in doing the act in question." In Flower v. Brumbach, 30 App. 294, it is expressly held that a party is a competent witness to prove his own intent. In Stearns v. Gasselin, 58 Vt. 38, the only question presented was the correctness of the ruling of the trial court in excluding the testimony of a party as to his intention in paying out money, that is, whether he intended to make a fraudulent preference among his creditors, when he made a certain payment, and in disposing of the question the Supreme Court says: "The question of the right to prove the intention of a party was before this court in Hulett, Admr., v. Hulett, 37 Vt. 581, and the ruling there stated to be that 'Where a person's intent in a particular transaction is a question in issue to be tried,

we see no grounds upon which he can be excluded from testifying to his intent.'" The judgment was reversed for the error in excluding this evidence. See also Lombard v. Oliver, 7 Allen, 155; Fisk v. Chester, 8 Gray, 506; Thacher v. Phinney, 7 Allen, 146; Wheeldon v. Wilson, 44 Me. 1. In the Maine case the question here under discussion was directly raised and passed upon and the court held it entirely proper for a party to testify what his motive and intent was in taking a certain mortgage, the court remarking that "it (the intention) was the material fact in the case, and this witness alone had positive personal knowledge upon that point."

Rice on Evidence, vol. 3, sec. 288, says: "Much of the misconception and uncertainty that pervades the right of a party to testify to his intent has been dispelled by a late decision of the New York Court of Appeals." The case referred to is The People v. Baker, 96 N. Y. 340, and is a direct authority to the point that where intent becomes an issue, the party may testify directly whether he had or had not the particular intent involved. Thompson on Trials, vol. 1, sec. 383, states the rule thus: "More broadly, the rule is, where the motive of the witness in performing a particular act or declaration becomes a material issue in the case, or reflects important light upon the issue, he may himself be sworn in regard to it, notwithstanding the difficulty in furnishing contradictory evidence and notwithstanding the diminished credit to which his testimony may be entitled as coming from the mouth of an interested party." In Thurston v. Cornell, 38 N. Y. 281, it is held that a party to a transaction is competent to testify to the intention with which a certain sum of money was taken, in answer to a charge that it was usurious interest. The case turned upon the question of the intention in receiving the money, and on the authority of earlier New York cases, the party was permitted to give his own evidence upon the point of his intention. In Zimmerman v. Marchland, 23 Ind. 474, it was held not competent for a party to testify to his intention, but this case is no longer recognized as the correct rule

in that state since it was overruled and the law laid down in accordance with the New York case in Greer v. The State, 53 Ind. 420. See also Kerrins v. The People, 60 N. Y. 228; State v. Evans, 33 W. Va. 417. In Odin Coal Co. v. Denman, 84 App. 190, it is said : " It is true, as contended by counsel, since the statute making parties competent witnesses to testify in their own behalf was enacted, that in all cases where intent is in issue, a party to the suit may testify directly to his intent, and in determining that issue the jury should consider the party's statement as to his own intention, together with all the other evidence and all the facts and circumstances in evidence in the case." In Wohlford v. People, 148 Ill. 296, it is said : " The intent was the gist of the felony charged, and it devolved upon the state to make it out. It was the right of the defendant to disprove the alleged intent by any competent evidence. No one could know better than the defendant what his intent was. And as he was a competent witness we see no reason why it was not competent for him to testify to his intent."

From the foregoing authorities it is clear that both in criminal and civil suits, where the intent of a party becomes a material issue in the case, the party may be asked the direct question what his intent was at the particular time or with respect to the particular act in question. In civil cases, like the one at bar, if there is no evidence that his intention was communicated to the opposite party and no circumstances from which it may fairly be submitted to the jury as a question of fact that the other party had notice of the particular intent, then the evidence should be excluded. Not, however, on the ground of incompetency of the witness to testify to the fact, but on the ground that his undisclosed secret intention is immaterial and irrelevant. It therefore follows from what has been said, that whether the court erred in refusing to allow appellant to state that at the time of making the contracts for the purchase and sale of grain, he had no intention to receive or deliver any grain, depends upon whether other facts and circumstances in the record so far connect the appellee with

such intent as to make it a fair question for the jury to determine under all the evidence whether it was the expressed or implied understanding between the parties that no grain was to be delivered but settlements made on differences only. The trial court failed to direct a verdict in this case for appellee, presumably upon the theory that there was evidence, without the excluded statement of appellant, requiring its submission to the jury; if this ruling was right the one excluding the evidence of appellant was wrong. Upon an examination of the evidence in the record we find abundant proof that there never was the slightest expectation on the part of either party that any grain would be delivered or received under the several contracts.

A few facts and circumstances in proof only are necessary to show the manifest purpose of the parties. Plaintiff in error had very little money at the time of these several contracts; barely enough to pay his personal expenses and to pay his railroad fare home. He had no property except the equities in two farms, one in Henry and the other in Clay county, Illinois. He told Armstrong when he solicited him to deal with the Updike Commission Co. he had no money, and Armstrong told him he did not need any as long as the market went his way. Plaintiff in error had no wheat to sell and did not need to buy any, and yet he sells 50,000 bushels of wheat in June to be delivered in September and buys 50,000 bushels to be delivered to him in December, making what is known as a "spread" on the Board of Trade; each deal was a sale of 5,000 bushels and a purchase of a like amount. All these several deals were consummated without plaintiff in error ever seeing any wheat or any sample. The first deal, 5,000 bushels, was closed out at a profit of about $30, which was settled on the basis of the differences in the price at which it was bought and its selling price on the day it was closed out, and clearly each of the other trades were settled in the same way. The note sued on in this case represents the total losses of appellant on all his deals, less the $30 profit on the first. The whole business was a mere shadowy pretense based on books of accounts and bulletins of markets.

Armstrong, although present in court, did not deny any of the statements of appellant; they are wholly undisputed, and must be accepted as true. This being true, there was manifest error in refusing to permit appellant to answer as to his intentions; its weight was for the jury to determine, but it was proper and relevant testimony and should have been allowed. See Weare Commission Company v. People, 209 Ill. 528, where a similar conclusion was reached from a state of facts very much like the facts in this case. It follows that the judgment of the trial court should be reversed, and in view of the fact that the evidence in the record so clearly and satisfactorily shows that this was a mere gambling contract in violation of the statute, the cause will not be remanded.

*Reversed.*

Finding of facts, to be incorporated in the judgment of the court :

We find as a fact that the note sued on in this case was given in settlement for losses sustained by appellant in dealing in grain on the Board of Trade in the city of Chicago through the Updike Commission Co.; that at the time the said deals and transactions were made there was no intention on the part of appellant or the Updike Commission Co., or either of them, that any grain should be delivered or received in pursuance of said trades; that it was mutually understood by the Updike Commission Co. and appellant, that all of the said deals, trades and transactions should be settled on differences between the market and the contract prices, and that appellee Armstrong had full notice of the foregoing facts.