## The Semler Milling Company v. William J. Fyffe.

### Gen. No. 12,552.

1. GAMBLING—*how question as to whether transaction in grain constitutes, to be determined.* Whether transactions in grain are legitimate or constitute gambling depends upon the intention of the parties. This intention may be ascertained from the transaction itself, the facts and circumstances attending it, and the defendant's general manner of doing business, including other transactions of a similar nature.

2. INTENTION—*when competent to permit party to testify to.* It is competent to permit a party to testify as to whether he intended to deliver the grain sold by him, where there are other facts and circumstances in evidence which tend to support the answer given to such question.

3. ARGUMENTS—*how order of, determined.* The right to open and close the arguments rests with the party upon whom the burden of proof has been cast.

Action of assumpsit. Appeal from the Superior Court of Cook County; the Hon. HENRY B. WILLIS, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1905. Affirmed. Opinion filed June 26, 1906.

GOODRICH, VINCENT & BRADLEY and WARREN NICHOLS, for appellant; WARREN NICHOLS, of counsel.

GEORGE B. CHAMBERLIN, for appellee; THOMPSON W. HOAGLAND, of counsel.

MR. JUSTICE FREEMAN delivered the opinion of the court.

This is an action brought by appellee, a commission merchant buying and selling grain in Chicago, to recover for money advanced and services rendered in a transaction on the board of trade. Appellant, prior to the special transaction now in controversy, had frequently through appellee bought and sold grain for future delivery. In August 1902 it had $300 on deposit with appellee and upon the 18th of that month gave the latter an order to sell ten thousand bushels of wheat for delivery during the month of September following. Appellee accordingly sold the wheat at the then market price of sixty-nine cents a bushel. The price thereafter steadily rose, and as appellant did

not have nor own any such quantity of wheat as it had thus sold for future delivery and to deliver it would have to purchase in the open market at the enhanced price so long as such prices prevailed, appellee called for additional margins and in response to such requests received at different times $400 more, making a total of $700 paid by appellant for that purpose. The price continuing to advance and appellant failing to respond to a call for still additional margins, appellee closed out the trade, buying in at eighty-four and seven-eighths cents a bushel the same amount of wheat he had sold for appellant at sixty-nine cents, the loss amounting to about $1,600, nine hundred more than appellant had advanced.

It is contended in appellant's behalf that the deal was a gambling transaction, and consequently appellant should recover under its plea of set-off the $700 it had advanced for margins; that in any event appellee should have closed out the trade the morning of September 22, 1902, in accordance with a letter alleged to have been sent by appellant, the receipt of which, however, is denied by appellee, at which time if so closed out there would have been a balance coming to appellant out of the $700 it had advanced; that there was error in the admission of certain evidence, in giving and refusing instructions and in not permitting appellant's counsel to make the opening and closing arguments to the jury.

It is not always easy to draw the line between what under the law is to be deemed a gambling transaction on the board of trade and what is not. It is said by appellant's attorneys that the parties to this suit were gambling on the differences in the market price of wheat for delivery in the month of September following. There is probably no doubt that when in August 1902 appellant sold 10,000 bushels for delivery in September through appellee, it did so in the hope that the price would decline and it might be able to purchase at a lower price before the time of delivery came, thus making a profit on the transaction. It took the chances of loss in case the price advanced    The

price did advance and appellant lost. If, however, it or appellee in its behalf actually had on hand or expected to obtain for delivery in September the actual grain it sold in August, the transaction could scarcely be called gambling, even though appellant may have made the sale, because it thought it was getting a higher price than it could obtain in September. Transactions of that kind are common in every commodity. The farmer watches the market and sells his grain when he thinks he can get the best price. If the prevailing market price does not suit him and he can afford to do so, he not infrequently holds on to it, waiting for a higher price. If he thinks the price is about to go lower and he wishes to sell, he is apt to hurry his grain to market to get rid of it before the decline. The difference in the case at bar is that appellant did not have the grain it sold in August anticipating a decline in price, and had to buy it or pay the difference in order to fill its contract for grain to be delivered in September. Appellee testifies that the transaction on his part in behalf of appellant was an actual sale and purchase of actual wheat represented by warehouse receipts and intended to be in fact delivered. The testimony on this question of fact was somewhat conflicting and the issue was submitted to the jury whose province it was to determine from the evidence whether or not the trade was a gambling transaction. Curtis v. Wright, 40 Ill. App. 491. We have examined the evidence, and while the exact character of such speculative transactions is no doubt open to question and controversy, we are of opinion that the jury were justified in finding from it that the transaction was legitimate and not gambling. It has been said that the "character of such transactions, that is, whether they are legitimate or gambling transactions, depends upon the intention of the parties. It is apparent that this intention, when called in question, must be ascertained from the transaction itself, the facts and circumstances attending it and the defendant's general manner of doing business, including other transactions of a similar nature." Beidler,

etc., v. Coe Com. Co., 102 N. W. Rep. 880.   There was in the case at bar evidence tending to show that while there were no deliveries by appellant itself, appellee as its agent was accustomed to receive and deliver warehouse receipts carrying title to actual grain.

It was also a question for the jury under the evidence whether the letter dated September 20, 1902, which appellant claims was sent to appellee, was in fact mailed and delivered.   That letter, it is said, contained directions that the trade in controversy should be closed out at the opening of the board of trade the morning of September 22, 1902.   There is evidence tending to show that such a letter was written and mailed, and that a letter press copy was made of it.   It is urged that a telegram sent by appellee of date September 23, 1902, shows that appellee had received the letter and had it in mind when the telegram was sent.   In the telegram appear the words "December 70¼. September 81", which reference to December, appellee says, was made "because they wanted to know the market", and in the press copy of the alleged letter in question appellant appears to háve inquired, "What do you think of December wheat?"   It is claimed that the words occurring in the telegram referred to December wheat and were in answer to the letter now claimed never to have been received. This argument is, however, by no means conclusive, and a consideration of all the telegraphic correspondence in evidence affords explanation of the jury's finding against appellant's contention in this respect.   We cannot say the finding is clearly contrary to evidence, even though, as jurors, we might have found otherwise.

Appellee was permitted to testify over appellant's objection that he sold the wheat with intention to actually deliver the same, and that he never made a trade for appellant on the board of trade with an intention of not so delivering.   There is no question but that the fact of intention was material in determining whether or not this was a gambling transaction.   In Dunbar v. Armstrong, 115 Ill. App. 549–551, it is said, with references to authorities: "It is, therefore, settled in this state, that all contracts

made between parties who have no intention of delivering or receiving the property, but intend to settle on differences that may exist in the market price of the article at the time of settlement and the time of contracting, are gambling contracts, and therefore void. The existence or non-existence of the intention not to receive or deliver is a question of fact to be determined by the jury." That case contains a full discussion of the question of the right of a party to testify to his intent, and the conclusion is reached that whether or not it would be error to exclude such testimony "depends upon whether other facts and circumstances in the record so far connect the appellee with such intent as to make it a fair question for the jury to determine under all the evidence whether it was the expressed or implied understanding between the parties that no grain was to be delivered, but settlements made on differences only." We find no error in the case before us in the admission of the testimony referred to.

We have carefully examined the instructions to the giving and refusal of which objection is urged. To consider them in detail would unduly extend this opinion and throw no new light upon legal principles involved. While it is probable that no material error would have been committed in giving some of the refused instructions, nor even in refusing the instruction complained of given at the request of appellee, we are convinced that the law applicable to the facts was correctly and with sufficient fullness laid before the jury by the court's instructions.

We find no error in the court's refusal to give appellant's attorneys the right to open and close the argument before the jury. The plaintiff was suing to recover money claimed to have been paid and for services rendered to the defendant. There was a plea of general issue. The burden was by the pleadings put upon appellee to prove his claim and "with the party holding the affirmative lies the right to open and conclude his case." Huddle v. Martin, 54 Ill. 258–259.

Finding no material error, the judgment of the Superior Court will be affirmed.                    *Affirmed.*