# Kempton Farmers Elevator Company, Appellee, v. Elick Lowitz et al., Appellants.

## Gen. No. 7,237.

1. CORPORATIONS—*dealing in grain futures as ultra vires act of grain elevator corporation.* The purchase and sale of grain for future delivery by a grain elevator company incorporated in Illinois is not beyond the powers of such company where the transactions are not mere gambling ones to be settled by the payment of differences only.

2. CORPORATIONS—*whether acts of manager binding on grain elevator corporation as jury question.* In an action in assumpsit by a grain elevator corporation against grain brokers for the recovery of corporate funds used by the manager in dealings in grain futures with defendants, it was error to direct a verdict for plaintiff where although there was evidence that the written contract of employment of the manager limited his power to deal in grain with any member of a board of trade except upon resolution of the board of directors, it also appeared that soon after his employment he began to deal in grain futures with a certain broker and soon thereafter transferred the accounts, which were carried in the company's books in its name, to defendants, that full records of all transactions were kept in the company's books of account which were accessible to all officers and directors, several of whom had knowledge of and participated in the transactions, and that the volume of transactions was large and extended over several years until adoption of a resolution by the directors directly terminating trades in futures by the manager in the name of the company or his own name.

3. CORPORATIONS—*admissibility of evidence to charge corporation with knowledge of acts of manager.* In assumpsit by a grain elevator corporation against grain brokers predicated upon dealings in grain futures by the manager with company funds, it was error to exclude evidence by an auditor who audited the books of the company annually and submitted reports of his audits to the officers and directors, as to what books were turned over to him for auditing and also to exclude the audits in question where there was evidence charging the auditor's knowledge to directors and that in making his audits he checked all cash grain proceeds into the grain account and the accounts with defendants.

4. EVIDENCE—*competency of corporation books to charge directors with knowledge of manager's dealings.* In assumpsit by a grain elevator corporation against grain brokers with whom the manager

of the elevator company had dealt in grain futures in the name of the company and with its funds, it was error, in admitting the corporate books of account in evidence, to limit the purpose for which they were admitted to showing the course of the transactions between the parties and as bearing on the question whether defendants were indebted to plaintiff, and to hold them incompetent to show knowledge, ratification or estoppel.

Appeal by defendants from the Circuit Court of Kankakee county; the Hon. ARTHUR W. DESELM, Judge, presiding. Heard in this court at the April term, 1923. Reversed and remanded. Opinion filed January 7, 1924. Rehearing denied April 2, 1924.

MAYER, MEYER, AUSTRIAN & PLATT and C. M. CLAY BUNTAIN, for appellants.

W. R. HUNTER and W. H. DYER, for appellee.

MR. JUSTICE JONES delivered the opinion of the court.

This is a suit instituted in the circuit court of Kankakee county by appellee against appellants. On January 10, 1923, the court rendered a judgment in favor of appellee for $20,573.56, on a verdict directed by the court on the motion of appellee at the close of all the evidence in the case. The case has been tried twice, the first trial resulting in a verdict in favor of the appellants. Upon motion appellee was granted a new trial with the result above indicated.

The action was in assumpsit. The declaration consists of the common counts. On motion of appellants the appellee filed a bill of particulars, which as finally amended set forth appellee's claim as follows: "For grain sold and delivered to defendants and money had and received by defendants to and for the use of plaintiff, for grain sold by defendants for plaintiff, on commission. Moneys received by defendants upon checks sent defendants by A. J. Hartquest without authority of plaintiff, drawn upon the State Bank of Kempton, Illinois, and the Farmers' State Bank, Cabery, Illinois, signed 'Kempton Farmers' Elevator Company,

per A. J. Hartquest, Manager,' to interest on said divers sums of money due and owing plaintiff, $3,010.33.'' The bill of particulars included a list of all the cars of grain shipped to defendants and the value of each. It also set forth the dates and the amounts of the checks in question.

The appellants are brokers of Chicago having a branch office at Kankakee, Illinois. The appellee through their general manager, A. J. Hartquest, carried on considerable business with the appellants, consisting of the sale of grain to the appellants for cash, the consignment of grain to the appellants to be sold by them for the account of appellee and the purchase by appellee on the Chicago Board of Trade of grain for future delivery. The appellee claimed that the appellants had not accounted for the proceeds of the grain consigned; that appellee's general manager had sent money by check to appellants in connection with transactions, which appellee claimed he had carried on without its authority. The accounts of appellee and appellants balanced on the books. In other words, there was no claim that appellants had failed to account for the money which came to their hands, but only that they had used said money in an unwarranted manner.

The evidence shows that the money claimed by the appellee was money which had been lost in deals in the buying and selling of grain for future delivery on the Chicago Board of Trade. All of these deals were carried on in the name of the appellee's elevator company. The recovery was sought upon three grounds: First, that the general manager, A. J. Hartquest, had no authority to bind the company in buying grain for future delivery on the Chicago Board of Trade, insisting that his authority, which was written, prohibited such transactions; second, that the buying and selling of grain for future delivery was ultra vires the corporation; and third, that all such deals were gambling

transactions and void. The appellants contend that the corporation is bound by the acts of its manager, Hartquest, because it held him out as one with apparent authority to act as he did.; that it ratified his acts and by its conduct is estopped from repudiating them; that dealing in grain for future delivery is not beyond the corporate powers of an elevator company unless the transactions involved were gambling transactions. Appellants further claim that even if the dealings in question were a misuse or excess of the powers granted appellee by its charter, nevertheless the appellee company knew, as a matter of fact, how its manager was operating in its name with the appellants and acquiesced in and ratified such dealings so that it cannot base any recovery on such dealings.

The case is before this court on a directed verdict. If the matters attempted to be proven by the appellants, or some one of them, constitute a valid defense to the claims of appellee and there is some competent evidence to support such grounds of defense, then the case must go to the jury. The court, upon a motion to direct a verdict, has no power to weigh the evidence of the respective parties, but must look solely to the evidence against which the motion is directed. (*Kelly v. Chicago City Ry. Co.*, 283 Ill. 640; *Mahlstedt v. Ideal Lighting Co.*, 271 Ill. 154, 163.) Whether the matters sought to be proven by appellants constitute a defense to the cause of action may best be considered in connection with the claims of appellee. The purchase and sale of grain for future delivery in our opinion is not beyond the powers of an elevator company incorporated under the laws of this State, unless such purchases were gambling transactions. (*Nash-Wright Co. v. Wright*, 156 Ill. App. 243.) A transaction in buying and selling grain for future delivery is not a gambling transaction, unless at the time it was entered into there existed a mutual intent on the part of both parties thereto that it should be settled not by the receipt or delivery of property but by the payment

only of differences in prices thereof. (Section 130, Criminal Code, Cahill's Ill. Rev. St. ch. 38, ¶ 308, and a long line of authorities sustain this position.) Whether there is a mutual intent not to deliver the grain is always a question of fact for the jury. (*Semler Milling Co. v. Fyffe*, 127 Ill. App. 514; *Pardridge v. Cutler*, 68 Ill. App. 569; *Medenwald v. Walton*, 212 Ill. App. 427; *Pardridge v. Cutler*, 168 Ill. 504; *Weare Commission Co. v. People*, 209 Ill. 528.)

The authority granted A. J. Hartquest, general manager of the company, was in writing, and was in part as follows: "To act for one year from this date as general manager of the business of the party of the first part at Kempton, Illinois, said business consisting of buying and selling of grain of all kinds and of any other commodity or commodities in which the party of the first part by resolution of its board of directors may decide to deal or engage, under the authority granted to it by its charter." It contained a further provision that Hartquest should not make any sale or sales, purchase or purchases in the name of or on account of the company of any grain of any kind on or through any member of the Board of Trade of Chicago or elsewhere, unless directed to do so by a resolution of the board of directors. The general rule is that it is the right and duty of persons dealing with an assumed agent to ascertain the extent of his power and to determine whether his act comes within his power and is such as to bind his principal. (*Merchants' Nat. Bank of Peoria v. Nichols & Shepard Co.*, 223 Ill. 41; *Reynolds v. Ferree*, 86 Ill. 570.) But where the authority of the agent is general and the acts done are within the apparent scope of the authority of the agent, the principal will not be permitted to deny that the agent was authorized to do the act he assumed to do. (*Faber-Musser Co. v. William E. Dee Clay Mfg. Co.*, 291 Ill. 240.) Whether the acts of Hartquest were within the apparent scope of his authority was a question of fact for the jury.

Then again a principal who has knowledge of the acts of his agent, which are beyond the scope of his authority, yet permits him to proceed and himself accepts the benefits of the transactions carried on by the agent may be estopped to deny the authority of the agent to the detriment of the third person dealing with him. (*Nash v. Classen*, 163 Ill. 409; *Faber-Musser Co. v. William E. Dee Clay Mfg. Co., supra.*) Possessing knowledge of the acts of the agent, a principal who accepts the benefits of the transactions ratifies the acts of his agent and cannot thereafter deny his authority to act. (*Barbour v. Scottish-American Mortgage Co.*, 102 Ill. 121; *Fraternal Army of America v. Evans*, 215 Ill. 629; *Eau Claire Canning Co. v. Western Brokerage Co.*, 213 Ill. 561.) Applying the evidence in the case to these rules of law, it becomes apparent that the evidence on the part of the appellants was sufficient to take the case to the jury. The evidence in the case disclosed that Hartquest became the manager of the appellee company in 1915, under the contract, a part of which is hereinbefore set forth. That contract ran for the period of one year. He was re-employed from year to year until 1920 by contracts containing the identical language of the first one. Soon after his appointment he began to buy grain for future delivery through James E. Bennett and Company, who had an office at Kankakee. Later he transferred his business to the appellants. The appellants kept two accounts with appellee, one termed the "Cash Grain Account," and one the "Future Account." Whenever profits in the future account warranted it, remittances were made to the appellee. If there were losses and the appellee became indebted to the appellants, the appellants either transferred cash from the cash grain account to the future account or rendered a statement to the appellee and received a check to balance the future account. Hartquest kept sufficient funds in the future account to cover margins required. The record of the transactions, which were very numerous, were accu-

rately kept both by the appellants in their books and by Hartquest in the regular account books of the appellee company.

Hartquest carried on numerous dealings for private individuals who lived in or around Kempton in the name of the company and appellants knew none of these individuals. The total transactions resulted in some $40,000 of loss to the appellee company during the whole course of dealing. Several thousand of this was the losses of private individuals who have not repaid the appellee company for the money advanced out of the company's funds by Hartquest.

During the latter part of the time, L. M. Nickerson acted as assistant manager. He kept the books and had knowledge of these transactions. His knowledge was the knowledge of the company and he was bound to disclose it. Some of the directors dealt in futures, through Hartquest, in the name of the company. The company employed D. M. Baker to audit the books of the company annually and to report to the directors.

The appellee company had two rooms at its office, one for the transaction of business with general customers and one for the directors. In the directors' room Hartquest kept two files hanging upon the wall, each with a pasteboard cover, which might be raised from the bottom. In one file there were tickets of cash grain sales and transactions and on the other the tickets and memorandum of the future dealings. No attempt was made to conceal either of these files and any of the directors might see them at any time. The books of the company were kept in the directors' room, where Nickerson worked upon them. When the directors met, he either placed the books in the safe without locking it or closed them and left them on the table around which the directors met. On October 14, 1919, the directors passed a resolution that: "From this date no trades in futures on Chicago Board of Trade by the Board of Directors of the Kempton Farmers' Elevator Company, to be executed by the

manager in the name of the company or in his own name.''

It is clear from this partial résumé that there was sufficient evidence in the case to go to the jury upon the questions of the apparent scope of Hartquest's authority; the question of estoppel on the part of the company to deny his authority; the question of ratification of his actions; whether the directors had knowledge of the acts of the agent, and whether or not the transactions in futures were gambling transactions. We express no opinion as to the weight of the evidence because the case must be retried. The weight of the evidence is for the jury. The knowledge of Baker, who audited the books of the company annually, was the knowledge of the company. The record discloses that as auditor he submitted his results to the board of the elevator company. The court refused to permit appellants to inquire of Hartquest what books were turned over to him for auditing. This was error. The court refused to admit in evidence the annual audits made by Baker. This also was error because these audits show that Baker had checked all cash grain proceeds into the grain account and accounts with the brokers. It appears the court admitted the books of appellee in evidence for the purpose of showing the course of the business transactions between appellee and appellants and as bearing on the question whether appellants were indebted to appellee. The court stated that it would instruct the jury that the books were competent for those purposes only and not to show knowledge, ratification or estoppel. This also was error.

For the reasons above set forth, it is apparent that the case should have been submitted to the jury and that the court erred in directing a verdict for the appellee. The judgment must therefore be reversed and the cause remanded for another trial.

*Reversed and remanded.*