## INDEMNITY INS. CO. OF NORTH AMERICA v. MIDWEST TRANSFER CO. OF ILLINOIS.

No. 10075.

United States Court of Appeals, Seventh Circuit.

Oct. 10, 1950.

634

Michael A. Gerrard, Chicago, Ill., for appellant.

Ferre C. Watkins, Charles F. Meyers, Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and KERNER and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

Defendant, Midwest Transfer Company, appeals from a judgment entered against it in favor of plaintiff, Indemnity Insurance Company of North America, for the balance of the premium allegedly due on a fleet insurance binder issued by it to Midwest through the offices of H. E. Cotter and Co., Inc,. a licensed insurance broker. Cotter, in 1946, had placed defendant's public liability, property damage and workmen's compensation coverage with the Preferred Accident Company of New York, but Preferred's cancellation of this coverage, effective as of April 4, 1947, made it necessary for Midwest to obtain insurance elsewhere. Cotter, after having attempted unsuccessfully to place the insurance with Travellers and Hartford, informed defendant that Indemnity would carry it, at the same time, according to the testimony of Ratner, Midwest's president and general manager, representing that he, Cotter, was agent for the latter company, although, as the lower court found, he had in fact, "no express or implied authority" to act as Indemnity's agent. Ratner thereupon asked Cotter to secure additional insurance on certain personal automobiles owned by Midwest or its employees, and, on March 12, 1947, binders insuring these automobiles were received from Indemnity, each of which recited that, "This binder is not valid unless signed by a duly authorized Agent of the Company." Directly above this state-

ment appeared the words "H. E. Cotter and Company, Agency" and the signature, "Edgar L. Warner, Agent." Ratner testified further that , in the course of a visit to the Jewel Tea Company, whose insurance coverage had been placed by Cotter with Indemnity, he was shown the policy issued to Jewel Tea, on which appeared, on the line designated "Agent," the words "H. E. Cotter & Co.," and that he was again assured by Cotter that the latter was agent for Indemnity.

On April 3, 1947, after Cotter had provided Calvin, Indemnity's Chicago representative, with lists of Midwest's trucks and equipment and the various states in which insurance coverage was desired, Calvin told Cotter that the rate for public liability and property damage coverage would be $4.50 per $100 of gross receipts, and, on April 8 or 9, a written binder incorporating the $4.50 rate was delivered to Cotter. On April 16, 1947, the insurance was mutually cancelled, the cancellation to take effect May 17, 1947.

On November 20, 1947, after an audit of Midwest's gross receipts and payrolls, Indemnity billed Midwest for the premium claimed to be due, based on the $4.50 rate. Midwest, however, insisted that the contracted rate was no more than $2.50 per $100 of gross receipts and refused to pay the additional premium demanded by Indemnity. Ratner testified that, throughout the negotiations with Cotter, Cotter had said that the rate would be the same as that on the Preferred policy, ($2.15 per $100 of gross receipts), and that the binders providing for a $4.50 rate had not been delivered to Midwest until after they had been cancelled. Defendant introduced in evidence a letter written by Cotter, dated April 29, 1947, which stated that the coverage "will cost you no more than $2.50 per $100 of gross receipts." The trial court, however, concluding that Cotter had "no express or implied authority to act as plaintiff's agent" and that he "was the agent of defendant, * * * and not the agent of plaintiff," held that "Cotter's acceptance of the public liability and property damage coverage at the rate of $4.50 per one hundred dollars of gross receipts on April 3,

1947, was defendant's acceptance" and entered judgment for plaintiff in the sum of $8,023.37.

■ Midwest's appeal is based on its contention that Indemnity, by designating Cotter as an agent in certain insurance policies and binders issued by it, clothed him with apparent authority to act as its agent and that plaintiff is, as a consequence, estopped from denying that Cotter had the authority to act on its behalf in the instant case.

That the doctrine of apparent authority, relied on by defendant, has long been a part of the law of Illinois is clear from the decisions in such cases as Doan v. Duncan, 17 Ill. 272, 275; Nash v. Classen, 163 Ill. 409, 414, 45 N.E. 276, and Faber-Musser Co. v. William E. Dee Clay Co., 291 Ill. 240, 244, 126 N.E. 186. The court below, however, made no finding as to whether Indemnity had in fact, clothed Cotter with apparent authority to act as its agent. Consequently, it becomes necessary to consider whether the finding that Cotter was the agent of Midwest and not the agent of Indemnity, throughout all the transactions involved in the instant case, in conjunction with the finding that he had no express or implied authority to act as Indemnity's agent, can be said to constitute, by implication, a finding that Cotter had no apparent authority to act as the agent of the insurance company.

■ We think that it does not follow from the trial court's finding that Cotter had neither express nor implied authority to act as the agent of Indemnity that he did not have apparent authority to do so, for there is a well established line of demarcation between implied and apparent authority. "That the two are not of similar import is shown by the distinction between them, commonly recognized, that while implied authority * * * is in source and nature a part of actual authority, apparent or ostensible authority is not actual authority, and is or may often be authority not actually possessed * * * existing solely as the result of an estoppel * *." 2 C.J.S., Agency, § 96, p. 1207, citing cases. Implied authority is defined as "actual au-

thority circumstantially proved," 2 C.J.S., Agency, § 99, p. 1227, i. e., authority implied from the facts or from authority expressly granted, whereas apparent authority, or authority by estoppel, is authority which one has been held out as possessing or has been permitted to exercise under such circumstances as to preclude a denial of its existence. 2 C.J.S., Agency, § 96, p. 1205.

■ Nor does the District Court's conclusion that Cotter was the agent of Midwest and not the agent of Indemnity negate the possibility of a finding that Cotter had apparent authority to act for Indemnity in certain of the transactions between the parties. As has been observed, that Cotter was not, in fact, the actual agent of Indemnity is not conclusive of the issue raised by this appeal—i. e., whether he had apparent authority to act as such agent. Moreover, in view of certain Illinois cases which recognize the possibility of the existence of a dual agency in insurance cases, the finding that Cotter was Midwest's agent does not constitute a finding that he did not have, or could not have had, apparent authority to act for Indemnity in some of the transactions. In France v. Citizens Casualty Co., 400 Ill. 55, 58, 79 N.E.2d 28, 30, the Illinois Supreme Court observed that "under certain circumstances a broker may become the agent of the insurer or on full disclosure to both parties, he may be the agent for both the insurer and insured as to some particular matters." And in Boston Store v. Hartford Accident & Indemnity Co., 227 Ill.App. 192, 194, it is stated that "a broker may be considered as the agent of the assured in some matters and also as the agent of the insurer in other matters, or sometimes as the agent of both parties."

■ The result, then, is that, although there is, in the record, evidence which, if credited, would support a finding that Cotter had apparent authority to act as the agent of Indemnity and that, so acting, he bound Indemnity to take Midwest's coverage at a rate lower than $4.50 per $100 of gross receipts, as contended by Indemnity, as well as evidence which, if credited, would support a finding that Midwest dealt with Cotter in reliance upon the existence of his apparent authority so to act, the tri-al court has made no finding either expressly or by necessary implication, on this vital issue. Consequently, since the record is not such as to enable this court to say, as a matter of law, that Cotter did or did not have such apparent authority or that Midwest did or did not act in reliance thereon, but reveals a conflict in the evidence relevant to these questions, the case must be and is remanded to the District Court for its determination of these two issues of fact, namely, the existence or non-existence of apparent authority in Cotter to bind plaintiff, and if it existed, whether defendant relied thereon.